IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BENJAMIN M. KNIPP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:12-cv-00465-RLM-APR ) ) |
| CSX TRANSPORTATION, INC., | ) ) |

**PLAINTIFF'S MOTION IN LIMINE TO BAR MEDICAL OPINIONS OFFERED BY DEFENDANT'S NON MEDICAL EXPERT WITNESSES ANASTASIOS D. TSOUMANIS, Ph.D. AND KEVIN G. VOSBURGH, P.E., C.V.F.I**

NOW COMES the Plaintiff, BENJAMIN M. KNIPP, by his attorneys, Harrington, Thompson, Acker & Harrington, Ltd. and respectfully moves this Court to bar any medical opinions offered by Dr. Anastasios D. Tsoumanis, Ph.D., a biomechanical engineer and Kevin G. Vosburgh, a mechanical engineer. In support of this motion, Plaintiff states as follows:

**A.    The Medical Opinions Of Dr. Anastasios D. Tsoumanis**

During the course of discovery Defendant disclosed the expert opinions of biomechanic expert Dr. Anastasios D. Tsoumanis. Dr. Tsoumanis' curriculum vitae is attached as Exhibit 1. His report of December 5, 2013 is attached as Exhibit 2. As part of his analysis Dr. Tsoumanis reviewed Plaintiff's medical records in this case which reveal that following the January 6, 2012 occurrence, Plaintiff was diagnosed with a cervical and thoracic strain secondary to a train accident. The emergency room doctor who evaluated Plaintiff on January 10, 2012 made the diagnosis of acute paraspinal muscle strain.

As part of his biochemical analysis at pages 2 and 3 of his report, Dr. Tsoumanis offers the following medical opinions:

1. Neck strains (microscopic tears of muscle fibers), would not be consistent with the mechanics of this accident.

2. Thoracic strains would not be consistent with the mechanics of this accident.

3. Lumbar strains would not be consistent with the mechanics of this accident.

4. Acute cervical bulges or herniations would not be consistent with the mechanisms and loads resulting from the subject accident.

These four opinions are clearly medical opinions which a biomechanic expert is not qualified to render. While Dr. Tsoumanis may be qualified to render biomechanical opinions with respect to the impact severity involved in the January 6, 2012 occurrence and the biomechanic implications, Dr. Tsoumanis as a biomechanic expert is not allowed to offer opinions regarding medical causation.

A decision discussing the exact issue at bar is instructive. See Layssard v. U.S., 75 Fed. R. Evid. Serv. 174 (W.D. La. 2007) (Exhibit 3). In Layssard, like this case, defendant retained a biomechanics expert to formulate various opinions regarding the cause of plaintiff's back and knee injuries after a low impact automobile collision. The expert offered five (5) core opinions, two (2) of which specifically stated: "*disc herniations or bulges are not consistent with the mechanics of this accident*" and "*a knee meniscus tear, or an aggravation of an existing tear would not be consistent with the mechanics of this incident*." Id. The spinal cord injuries and knee injuries were plaintiff's medically diagnosed conditions as testified to by his treating physicians. The biomechanical expert conceded he was not a medical doctor, could not diagnose injuries and was not qualified

2

to render testimony to a "reasonable degree of medical certainty." Id.  Accordingly, plaintiff challenged the above noted medical causation opinions the expert was prepared to testify at to at trial under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993).

Similar to the case at bar, the expert in Layssard would not defer to the medical opinions of plaintiff's treating physicians.  The Layssard expert, like Dr. Tsoumanis in this case, stated that his biomechanical expertise rendered him uniquely qualified to offer opinion testimony as to the cause of plaintiff's injuries.  The Court in Layssard strongly disagreed with the expert's logic and barred all of the expert's opinions relating to the cause of plaintiff's injuries.  The Court held:

> "In essence, Dr. Baratta says that he is not a medical doctor and cannot offer an opinion as to medical causation, but he refuses to defer to the opinion of a medical doctor because the medical doctor presumably does not have his own engineering knowledge. In this situation, *no one* could offer an opinion as to medical causation, for it creates a classic chicken-or-egg problem: the bio-mechanical engineer could not offer medical opinions because he is not a doctor, but the doctor could not offer medical opinions because he has no bio-mechanical engineering knowledge. This is a severely flawed assumption. **Put simply, medical doctors are qualified--indeed, uniquely qualified--to offer opinions as to medical causation; bio-mechanical engineers are not**.

The Layssard Court went onto specifically detail what a biomechanical expert like Dr. Tsoumanis should and should not be allowed to testify to regarding causation.  The Court stated:

> "In our view, a bio-mechanical engineer may state the scientific measurements and calculations of the forces involved and state whether or not injuries generally would or would not be expected from such forces. As for the specific question of whether or not a particular accident caused a particular injury to a particular plaintiff, the bio-mechanical engineer's calculations are simply one factor to consider, another being the testimony

3

of physicians as to medical causation. **For these reasons, we would at least preclude Dr. Baratta from testifying as to medical causation and would limit his testimony to the forces involved in the collision and whether or not these would generally lead to injury**."

In this case, Plaintiff does not dispute that Dr. Tsoumanis can discuss biomechanical risk factors and discuss whether those risk factors can generally lead to injury. However, he cannot offer medical causation testimony as to whether the January 6, 2012 occurrence caused Plaintiff specific injuries. Simply put, he cannot say that the alleged occurrence did not cause neck and back injuries as diagnosed by his doctors. Dr. Tsoumanis, like the expert in Layssard, must defer to Plaintiff's treating physicians as it pertains to medical causation. Dr. Tsoumanis is not a medical doctor, thus he is unqualified to speak to medical causation in any form. Defendant clearly desires to offer such testimony. Not only is such testimony from Dr. Tsoumanis inherently unreliable pursuant to FRE 702 and Daubert for the reasons stated above, but also extraordinarily prejudicial to Plaintiff as the jury would be allowed to hear additional medical causation testimony from an individual not qualified to render it. Additionally, in the alternative, the testimony should be barred pursuant to FRE 403. Accordingly, the testimony of Dr. Tsoumanis should be limited as set forth above.

WHEREFORE, for the reasons stated above, the Plaintiff, BENJAMIN M. KNIPP, moves this Court for an order granting Plaintiff's Motion *in limine* with respect to Dr. Tsoumanis

**B.     The Medical Opinions of Kevin G. Vosburgh, P.E.**

In its expert disclosure pursuant to Rule 26, Defendant named mechanical engineer Kevin G. Vosburgh. A copy of Mr. Vosburgh's curriculum vitae is attached as Exhibit 4.

4

In disclosing Mr. Vosburgh's opinions, Defendant referred Plaintiff to the report which is attached as Motion Exhibit 1, which Mr. Vosburgh never signed.  Attached as Motion Exhibit 4 is a report dated February 16, 2012 which Defendant has identified as containing Mr. Vosburgh's opinions.  At page 2 of the February 16, 2012 report, Mr. Vosburgh along with Dr. Tsoumanis, who also signed the report, offers the following medical opinions:

5. Due to the minimal severity .of this impact and based on the mechanics of this accident there is no expectation for soft tissue injuries (i.e. muscle tissue strains) to the cervical and lumbar levels of the occupants of Train 1.

6. In the motions of this accident, the spine is subjected to minor sudden inertial loading. The potential for acute injury or aggravation of pre-existing lumbar and cervical symptoms is not expected to occur.

7. The mechanics required to cause structural changes to the soft tissues of the spine, further changes in' the degenerative spinal processes would not be expected to result from this accident.

8. The occupant motions involved in this accident would be well within the intensity of those experienced during activities of daily living, and not expected to cause or aggravate injury.

Clearly, the above referenced opinions are medical opinions and not mechanical engineering opinions.  For the same reasons a biomechanical expert cannot offer medical opinions, a mechanical engineer is certainly not qualified to offer medical opinions concerning medical causation. Medical causation opinions are properly offered by medical care providers.  See Layssard v. U.S., 75 Fed. R. Evid.. 174 (W.D. La. 2007).  While Mr. Vosburgh may be qualified to offer mechanical engineering opinions, he is not qualified to offer opinions with respect to the medical causation in this case.

While it would seem obvious that only medically trained professionals can offer medical causation testimony, there are cases which discuss the issue.  Instructive to the case at bar is Jones v. Lincoln Electric Co., 188 F.3d 709 (7th Cir. 1999).  In Jones, the

5

Seventh Circuit held that a witness who had a mechanical engineering degree but who lacked a medical degree or medical training was not qualified to give expert testimony on medical questions about the effects of manganese and manganese fumes on the human body.  Id. at , 723-24.  The Jones court reasoned that the conclusions were rooted in medical knowledge and training that the witness did not have.

Similarly, in Stutzman v. CRST, Inc., 997 F.2d 291, 296 (7th Cir. 1993), the Seventh Circuit affirmed the trial court's decision to bar a physical therapist from offering a medical prognosis for the long-term effects of physical therapy on the plaintiff's ability to return to work.  The Stutzman court deemed this non-physician unqualified to render such medical opinions.  Id.

In this case, Mr. Vosburgh should not be allowed to testify to any medical opinion or criticize the medical opinions of Plaintiff's treating physicians because he is simply unqualified and not trained to do so.

WHEREFORE, for the reasons stated above Plaintiff respectfully moves this Court for an order limiting the testimony of Mr. Vosburgh as requested.

                Respectfully submitted,

By:       /s/Robert B. Thompson
           Robert B. Thompson
           Laurence C. Acker
           Robert E. Harrington, III (No. 24616-45)
           Harrington, Thompson, Acker & Harrington, Ltd.
           180 North Wacker Drive, Suite 300
           Chicago, Illinois 60606
           (312) 332-8811
           (312) 332-2027 Fax
           htah@harringtonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on *August 14, 2014* a copy of the foregoing:

**PLAINTIFF'S MOTION IN LIMINE TO BAR MEDICAL OPINIONS OFFERED BY DEFENDANT'S NON MEDICAL EXPERT WITNESSES  ANASTASIOS D. TSOUMANIS, Ph.D. AND KEVIN G. VOSBURGH, P.E., C.V.F.I**

was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

    Respectfully submitted,

    /s/ Robert B. Thompson
    Robert B. Thompson

Harrington, Thompson, Acker & Harrington, Ltd.
180 North Wacker Drive, Suite 300
Chicago, Illinois 60606
(312) 332-8811
(312)332-2027 (fax)
htah@harringtonlaw.com